KAHN, J.
The State appeals an order entered by the trial court dismissing pending drug charges against the appellee Frederick Myers. The issue in this case concerns the involvement in the cases of Traci Kite, a person variously known as a confidential informant or cooperating source, who made the drug purchase in one of the underlying cases and who was present, but did not actually make the purchase in the other case. We reverse the order of dismissal.
In February, March, and April 2000, Kite was arrested on at least two occasions in multiple counties within the Eighth and Third Judicial Circuits of Florida. Eventually she entered a guilty plea to petit theft charges in Columbia County where the county judge placed her on twelve months’ misdemeanor probation. Sometime after that, the Eighth Judicial Circuit’s Special Investigations Unit (SIU) approached Kite and requested that she become a cooperating source in drug investigations. Kite agreed and on August 7, 2000, and August 16, 2000, under the supervision of the SIU, she took part in the two drug purchases that form the basis of the pending charges against appellee Myers. Although the SIU works under the direct supervision of the State Attorney’s Office, the trial court found that the assistant state attorney who prosecuted the cases had no prior actual knowledge of Kite’s cooperation with SIU.
After the State brought charges, the defense filed a Florida Rule of Criminal *1201 Procedure 3.190(b) motion to dismiss. In this motion, the defense set out that Kite was on probation in Columbia County and that a condition of probation stated that she “will not use intoxicants to excess nor ... visit places where intoxicants, drugs or other dangerous substances are sold or dispensed ... or used unlawfully.” The motion also sets out certain facts concerning Kite’s previous encounters with the law, and concludes by alleging that the State of Florida “has engaged in outrageous, contemptuous, and illegal conduct which should not be countenanced.”
After a hearing, at which no material facts were disputed, the circuit judge made the following conclusion in an order of dismissal:
It is the practice in this circuit for Assistant State Attorneys, law enforcement officers, and representatives of the SIU to seek permission of the judge who placed an individual on probation prior to using that individual as a cooperating source in an undercover narcotics investigation. Permission is granted or denied on a case by case consideration. No effort was made by SIU to obtain the permission of the Columbia County judge to utilize Kite as a cooperating source, and no effort was made to obtain such permission from a County or Circuit Judge of the Eighth Circuit.
Citing only a prior circuit court ruling in the Eighth Circuit, the judge proceeded to dismiss all charges against appellee on the basis that failure to secure permission of a sentencing judge before using a probationer as an informant, where the informant would be allowed or required to violate conditions of probation, would transgress the defendant’s due process rights under the Florida and federal constitutions. The State has appealed the order of dismissal. This court has jurisdiction. See Fla. R.App. P. 9.140(c)(1)(A). Because we are reviewing the trial court’s legal conclusion as to whether the facts constitute a due process violation, we utilize the de novo standard. See State v. Taylor, 784 So.2d 1164 (Fla. 2d DCA 2001).
Neither the defendant nor the trial court has offered us citations of cases in which failure to follow a “local custom” has resulted in any denial of due process to a criminal defendant. There is, however, a substantial body of law governing what has been called the due process defense or the outrageous conduct defense. In our view, none of this law supports dismissal in this case.
Florida first recognized the due process defense in State v. Glosson, 462 So.2d 1082 (Fla.1985). In Glosson, the Eighth Circuit State Attorney’s Office knew about and supervised the operations of an undercover informant named Wilson. See id. at 1083. The Levy County Sheriff made an agreement with Wilson “whereby Wilson would receive ten percent of all civil forfeitures arising out of successful criminal investigations [Wilson] completed in Levy County.” Id. Relying upon federal case law, the supreme court, observed, “The due process defense based upon governmental misconduct is an objective question of law for the trial court, as opposed to the subjective predisposition question submitted to the jury in the usual entrapment defense.” Id. at 1084. The court went on to note that the United States Supreme Court “appeared to recognize the due process defense, regardless of the defendant’s predisposition, where ‘the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.’ ” Id. at 1084 (quoting United States v. Russell, 411 U.S. 423, 431-32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (dicta)). Observing “governmental misconduct which violates the constitution *1202 al due process right of a defendant ... requires the dismissal of criminal charges,” the supreme court concluded that the fee agreement in Glosson violated a defendant’s right to due process. Id. at 1085.
The due process defense recognized in Glosson mil also apply where officers manufacture illicit drugs that are later used by law enforcement to carry out reverse sting operations. See State v. Williams, 623 So.2d 462 (Fla.1993). In Williams, the court focused upon the actions of the Broward County Sheriffs Office in actually manufacturing crack cocaine for the sting operations, noting that such manufacture was prohibited by section 893.02(12)(a), Florida Statutes (1989), and characterized the illegal manufacture of illicit drugs by law enforcement as “worlds apart” from the mere delivery of a controlled substance in a standard reverse sting operation. Id. at 466. Concluding that the due process defense would apply to such a law enforcement operation, the court noted:
[ T]he protection of due process rights requires that the courts refuse to invoke the judicial process to obtain a conviction where the facts of the case show that the methods used by law enforcement officials cannot be countenanced with a sense of justice and fairness. The illegal manufacture of crack cocaine by law enforcement officials violates this Court’s sense of justice and fairness.
Id. at 467. See also Metcalf v. State, 635 So.2d 11 (Fla.1994) (reversing conviction of solicitation to deliver cocaine because police used illegally manufactured drugs in a reverse sting operation).
Appellee in the present case cites Traylor v. State, 596 So.2d 957 (Fla.1992), for the proposition that state due process rights may be greater than those afforded by the federal constitution, but he is unable to cite any Florida cases that have extended the due process defense beyond the situations present in Glosson, Williams, and Metcalf. Instead, the defense argues that the State’s use of a probationer to make drug cases is at least as outrageous as the conduct condemned in Williams. This argument is not convincing.
Recent Florida cases have been reluctant to extend the parameters of the due process defense. See, e.g., Taylor, 784 So.2d at 1166 (finding no due process violation where officer obtained a search warrant based upon two drug purchases from the defendant at the defendant’s residence and then, instead of executing the warrant, returned to the residence and made a third purchase of cocaine in an amount that triggered the drug trafficking statute); State v. Figuereo, 761 So.2d 1252 (Fla. 3d DCA 2000) (finding no due process violation where defendant alleged that his former girlfriend became a confidential informant and managed to convince defendant to purchase two kilograms of cocaine from an undercover detective); Hamon v. State, 744 So.2d 1065 (Fla. 4th DCA 1999) (declining to find a due process violation where undercover police officers set up a reverse sting operation whereby the officers would sell counterfeit cocaine).
We are unable to discern any convincing argument that should persuade a court to find that the use of a probationer as a confidential informant in a sting operation should be viewed in the same light as putting an informant on a contingency fee or actually manufacturing illicit drugs for use in a law enforcement operation. We can understand how the circuit judge might have respected what he characterized as a local custom in the Eighth Circuit concerning the use of probationers as confidential informants. Nevertheless, we have identified no substantive law to sup *1203 port the proposition that violation of such a tradition would implicate the defendant’s due process rights.
REVERSED and REMANDED.
PADOVANO and POLSTON, JJ., concur.